DEGGE *v.* HITCHCOCK, POSTMASTER GENERAL.

MAURY *v.* SAME.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

Nos. 157, 158. Argued January 31, 1913.—Decided May 26, 1913.

This is apparently the first case in which a Federal court has been asked to issue a writ of certiorari to review a ruling by an executive officer of the United States Government.

Constant failure to apply for a particular remedy suggests that it is due to conceded want of power in the courts to grant it.

The scope of the writ of certiorari as it exists at common law has not been enlarged by any statute in the Federal jurisdiction, and cases

in which it has issued under statute from state courts to state officers are not controlling in the Federal courts.

While the original scope of the writ of certiorari has been enlarged so as to serve the office of a writ of error, it has always run from court to court or to such boards, tribunals and inferior jurisdictions whose findings and decisions had the quality of a final decision and from which there was no appeal or other method of review.

The decision of the Postmaster General that a fraud order shall issue is not the exercise of a judicial function, and if the decision is beyond his jurisdiction the party injured may obtain relief in equity; the order cannot be reviewed by certiorari.

So long as proceedings before an executive officer are *in fieri* the courts will not interfere with them. *Plested* v. *Abbey*, 228 U. S. 42.

The writ of certiorari is an extraordinary remedy, and in deciding that it will not issue in a particular case this court does not anticipate in what cases exceptional facts may call for its use.

35 App. D. C. 218, 228, affirmed.

In 1909 complaint was made to the postal authorities that W. W. Degge and the Wellington corporations, of which he was president, were using the mails in furtherance of a fraudulent scheme. Notice was given to Degge and the corporations and a hearing was had before the officer to whom, under the Postal Regulations, the disposition of this class of cases was committed. He found that the charges were true and to his finding he attached a copy of all the evidence which had been taken. The report was confirmed by the Postmaster General, who issued an order directing the postmaster at Boulder, Colorado, not to deliver mail addressed to Degge or to these corporations, but to return all such letters to the sender with the word "Fraudulent" plainly stamped on the envelope. Rev. Stat., §§ 3929, 4041.

Degge, the corporations, and some of the stockholders, thereafter filed petitions in the Supreme Court of the District of Columbia alleging that the officer before whom the hearing had been had was without power to make the report on which the Postmaster General had acted; that there was no testimony to show the existence of a fraud-

ulent scheme, and no evidence whatever to support the finding. It was alleged that the order was arbitrary, in excess of the power of the Postmaster General, and void. The petitioners prayed that the court would issue writs of certiorari directing the Postmaster General to certify the record to the court and that upon hearing and review thereof the court would set aside the order. A rule to show cause was granted. The Postmaster General demurred on the ground that the court was without jurisdiction to issue the writ, and subject thereto answered, attaching the record and the evidence on the hearing before the officer of the Post-Office Department having charge of the Fraud Orders investigations.

The case was heard by the Supreme Court of the District of Columbia on petition, demurrer and answer. After a hearing the court dismissed the case. The Court of Appeals of the District, without passing on the right to issue the writ, affirmed the judgment upon the ground that the evidence supported the order. The petitioners appealed and on the argument in this court, the Government renews the contention that the District Court was without jurisdiction to issue the writ of certiorari to the Postmaster General.

*Mr. O. A. Erdman,* with whom *Mr. Walter B. Guy* was on the brief, for plaintiffs in error:

The rights of petitioner Degge and the corporations are based upon the common right of citizens to receive mail unless that right has been forfeited by a use of the mails for purposes which are condemned by the acts of Congress as criminal, such as lotteries and similar schemes for perpetrating fraud. Petitioners' business consists in making investments in lands, irrigation ditches, reservoirs, mining property, stocks and securities, and they are not engaged in any business or practice prohibited by any law of the United States. The facts shown by the evidence

and reported to the Postmaster General are not only insufficient in law to sustain the supposed "findings," but do not constitute any scheme or device condemned by §§ 3929, 4041, Rev. Stat., or any other law authorizing the Postmaster General to issue a fraud order.

The petitioning stockholders based their case on the common right of citizens to have their mail forwarded and delivered, unless such mail contained matter vicious, corrupting, immoral or dangerous in violation of the laws of Congress.

Inasmuch as the Postmaster General has rested his defense in this proceeding entirely upon the findings and conclusions of his subordinate, and has relied upon such findings and conclusions as being conclusive and not subject to review by the courts, suppressing and omitting from this record the papers on which such findings and conclusions are based, it becomes necessary to bring up the omitted papers by means of the writ of certiorari, and this will show how many more "false and misleading" statements there are and who made them.

The answer of the Postmaster General declaring that whether he is right or wrong, or whether he has misconstrued the law or not, is not for the courts to say, and that the courts have no business to interfere, is in the face of the fact that the findings do not support any fraud order against any of the corporations, according to which Degge is the only offender.

Decisions of the Postmaster General in fraud order cases are by no means final and conclusive. *Bank* v. *Gilson,* 161 Fed. Rep. 290; *American School* v. *McAnulty,* 187 U. S. 94, 108–110; *Marbury* v. *Madison,* 1 Cranch, 137, 171.

The writ of certiorari at common law is considered as an extraordinary remedy resorted to for the purpose of supplying a defect of justice in cases obviously entitled to redress, and yet unprovided for by the ordinary forms

of proceedings. Harris on Cert., §§ 17–21; 4 Enc. P. & P. 9, and see *Duggan* v. *McGruder*, 12 Am. Dec. 536.

In the Federal courts it is in the nature of a writ of error to bring up after judgment the proceedings of an inferior court or tribunal whose procedure is not according to the course of the common law. *Harris* v. *Barber*, 129 U. S. 366–369; *Dist. of Col.* v. *Brooke*, 29 App. D. C. 563; *Dist. of Col.* v. *Burgdorf*, 6 App. D. C. 465.

The test of the question whether a proceeding is reviewable upon certiorari is not what are the usual functions exercised by the tribunal, but what is the character of the proceedings sought to be reviewed. Where an executive officer is charged with duties of a judicial nature the action can be so reviewed. *Duggan* v. *McGruder*, 12 Am. Dec. 527, 536; *Cunningham* v. *Squires*, 2 W. Va. 422, 424; *State* v. *Ansel*, 76 So. Car. 395, 412–414.

The proceeding before the Postmaster General in this case was quasi-judicial in character. It involved a hearing and the ascertainment of facts upon evidence. It resulted in a decision based upon alleged satisfactory evidence. *United States* v. *Burton*, 131 Fed. Rep. 552, 556.

Public officers whom the court has power by injunction to restrain are ministerial and not judicial; certiorari is an appropriate legal remedy and there is no necessity for resort to equity. *Western R. R. Co.* v. *Nolan*, 48 N. Y. 513, 518.

Where there is technically no record, the proceedings and orders in the nature of a record can, as a rule, alone be regarded. But the evidence upon a disputed jurisdictional fact is reviewable, as well as every issue of law upon the question of jurisdiction. Not only the record, but the evidence to support jurisdiction must, when necessary, be returned. *Whitney* v. *Board*, 14 California, 479, 500; *People* v. *Goodwin*, 1 Selden (N. Y.), 568, 572; *Stone* v. *Mayor*, 25 Wend. (N. Y.) 157, 170; see also *People* v. *Assessors*, 39 N. Y. 81, 88; *People* v. *Assessors*,

40 N. Y. 154, 158; *People* v. *Allen,* 52 N. Y. 538, 541; *People* v. *Board of Police,* 39 N. Y. 506, 518; *People* v. *Brooklyn,* 103 N. Y. 370.

All parties interested and aggrieved are entitled to the writ. It is not necessary that a petitioner for a certiorari should be a party of record, but only that he should be interested in the subject-matter upon which the record rests. *Dyer* v. *Lowell,* 30 Maine, 217, 220; *Hemmer* v. *Bonson* (Ia.), 117 N. W. Rep. 257, 259.

If the exercise of a sound judicial discretion requires that one thus injured ought to have the writ it is an abuse of authority to refuse it. *State* v. *Chittenden,* 127 Wisconsin, 468, 470, Syl. 4.

Where individual rights are affected in a case in which there are no formal parties and no appeal or other remedy for an excess of jurisdiction exists, a review by certiorari is allowed to those who are bound by the proceedings. *Elliott* v. *Superior Court,* 144 California, 501, 508; *Campau* v. *Button,* 33 Michigan, 525; *Wilson* v. *Bartholomew,* 45 Michigan, 41; *Cowing* v. *Ripley,* 76 Michigan, 650; *Pingree* v. *Commissioners,* 30 Maine, 351; *State* v. *Snedeker,* 30 N. J. L. 80; *People* v. *Ford,* 112 N. Y. S. 130; *Clary* v. *Hoagland,* 5 California, 476; *State* v. *Rose,* 4 N. Dak. 319, 329.

The writ should have been granted as of right. *Matthews* v. *Matthews,* 4 Ired. L. (N. C.) 155; *State* v. *Bill,* 13 Ired. L. (N. C.) 373; *Queen* v. *Justices,* L. R. 5 Q. B. 473; *Re Lord Listowel's Fishery,* 9 Ir. C. L.        , 46 Q. B.

Even lapse of time will not bar ordinarily in meritorious cases. *Barnard* v. *Fitch,* 48 Massachusetts, 605, 609; *Drainage Commissioners* v. *Volke,* 163 Illinois, 243, 248; *Sturr* v. *Elmer* (N. J.), 67 Atl. Rep. 1059; *State* v. *Hudson City,* 29 N. J. L. 115.

*Mr. Assistant Attorney General Adkins,* with whom *Mr. Louis G. Bissell* was on the brief, for defendant in error:

Certiorari does not lie to review administrative action by cabinet officers. *Bates & Guild Co.* v. *Payne,* 194 U. S. 106; *Decatur* v. *Paulding,* 14 Pet. 497, 515; *Gaines* v. *Thompson,* 7 Wall. 347; *Marbury* v. *Madison,* 1 Cranch, 137; *Marquez* v. *Frisbie,* 101 U. S. 473; *Riverside Oil* v. *Hitchcock,* 190 U. S. 316; *United States ex rel.* v. *Black,* 128 U. S. 40; *United States* v. *Young,* 94 U. S. 258.

At common law and in the District of Columbia a writ of certiorari runs to an inferior tribunal only to ascertain whether that tribunal had jurisdiction and has observed due process of law. *Basnet* v. *Jacksonville,* 18 Florida, 523; *Bradshaw* v. *Earnshaw,* 11 App. D. C. 495; *District of Columbia* v. *Burgdorf,* 6 App. D. C. 471; *Harris* v. *Barber,* 129 U. S. 366; *Hendley* v. *Clark,* 8 App. D. C. 165; *In re Schneider,* 148 U. S. 162; *People* v. *Lindblom,* 55 N. E. Rep. 358 (Ill.); *Phillips* v. *Welch,* 12 Nevada, 158; *Reaves* v. *Ainsworth,* 219 U. S. 297; *The King (Martin)* v. *Mahoney,* 1910, 2 Irish Law Reports, 695, 727 *et seq.*

In some jurisdictions the scope of the writ has been enlarged to include questions of law arising on the record. *Keenan* v. *Goodwin,* 17 R. I. 649; *People* v. *Board of Police,* 39 N. Y. 506.

It is practically universally agreed that the case is not reviewable on the merits, and that a writ of error is inappropriate to settle disputed questions of fact. *Water Co.* v. *Commissioners,* 112 Massachusetts, 206; *Harris* v. *Barber,* 129 U. S. 366; *Imperial Water Co.* v. *Supervisors,* 120 Pac. Rep. 780, 786; *Rawson* v. *McIlvaine,* 49 Michigan, 194; *State* v. *Common Council,* 53 Minnesota, 238; *State* v. *Hudson,* 32 N. J. L. 365.

If the court has power on certiorari to review questions of law, it will not interfere with decision of the Postmaster General. *Bates and Guild Co.* v. *Payne,* 194 U. S. 108; *Smith* v. *Hitchcock,* decided this term.

The action of the Postmaster General cannot be quashed

on writ of certiorari. He had jurisdiction to issue the fraud orders. *Public Clearing House* v. *Coyne,* 194 U. S. 497; *School of Magnetic Healing* v. *McAnnulty,* 187 U. S. 94; Rev. Stat., §§ 3929, 4041.

The fraud order issued by Postmaster General was correct in law, and his findings of fact were supported by ample evidence. *Harris* v. *Rosenberger,* 145 Fed. Rep. 449; *Public Clearing House* v. *Coyne,* 194 U. S. *supra.*

The evil sought to be remedied is the same in this case as in *Durland* v. *United States,* 161 U. S. 306, 313.

As to what constitutes scheme to defraud, see *Branaman* v. *Harris,* 189 Fed. Rep. 461; *Durland* v. *United States,* 161 U. S. 306; *Harris* v. *Rosenberger,* 145 Fed. Rep. 449; *Horn* v. *United States,* 182 Fed. Rep. 721.

The trial court properly refused the writ on the merits following the hearing on petition and answer. The writ does not issue as of right, but in the discretion of the court. *District of Columbia* v. *Brooke,* 29 App. D. C. 563; *Ex parte Hitz,* 111 U. S. 766; *Hyde* v. *Shine,* 199 U. S. 62; *People* v. *Board of Assessors,* 39 N. Y. 87.

The practice is followed in many jurisdictions. *Am. Const. Co.* v. *Jacksonville Ry.,* 148 U. S. 372, 388; *Water Co.* v. *County Commissioners,* 112 Massachusetts, 206; *Ex parte Dugan,* 2 Wall. 134; *Walbridge* v. *Walbridge,* 46 Vermont, 617.

Similar procedure is sanctioned by this court for other extraordinary writs. *Ex parte Webb,* 225 U. S. 663; *Ex parte Yarborough,* 110 U. S. 651, 652; *In re Baiz,* 135 U. S. 403; *Riverside Oil Co.* v. *Hitchcock,* 190 U. S. 316.

Mr. Justice Lamar, after making the foregoing statement, delivered the opinion of the court.

This case is the first instance, so far as we can find, in which a Federal court has been asked to issue a writ of certiorari to review a ruling by an executive officer of the

United States Government.  That at once suggests that the failure to make such application has been due to the conceded want of power to issue the writ to such officers. For, since the adoption of the Constitution, there have been countless rulings by heads of departments that directly affected personal and property rights and where the writ of certiorari, if available, would have furnished an effective method by which to test the validity of *quasi*-judicial orders under attack.  The modern decisions cited to sustain the power of the court to act in the present case are based on state procedure and statutes that authorize the writ to issue not only to inferior tribunals, boards, assessors and administrative officers, but even to the Chief Executive of a State in proceedings where a *quasi*-judicial order has been made.  But none of these decisions are in point in a Federal jurisdiction where no statute has been passed to enlarge the scope of the writ at common law.

In ancient times it was used to compel the production of a record for use as evidence; more often to supplement a defective record in an appellate court, and later, to remove, before judgment—*Harris* v. *Barber,* 129 U. S. 366, 369—a record from a court without jurisdiction and with a view of preventing error rather than of correcting it. When later still its scope was enlarged so as to make it serve the office of a writ of error, certiorari was granted only in those instances in which the inferior tribunal had acted without jurisdiction, or in disregard of statutory provisions.  But in those cases the writ ran to boards (*Reaves* v. *Ainsworth,* 219 U. S. 296), officers, tribunals and inferior judicatures, whose findings and decisions, even though erroneous, had the quality of a final judgment, and there being no right of appeal or other method of review, the extraordinary writ of certiorari was resorted to from necessity to afford a remedy where there would otherwise have been a denial of justice.  But in all those cases it ran

from court to court,—including boards, officers or tribunals having a limited statutory jurisdiction, but whose judgments would be conclusive unless set aside.

The appellant insists that under these common law principles the writ should issue here because, having to act "upon evidence satisfactory to him" (Rev. Stat., § 3929), and notice and a hearing having been given, the Postmaster General acted in a judicial capacity in making the order, which was therefore subject to review on certiorari because he exceeded his jurisdiction and, without any proof of fraud in the use of the mails, deprived appellants of the valuable right to receive letters and money through the post-office.

It is true that the Postmaster General gave notice and a hearing to the persons specially to be affected by the order and that in making his ruling he may be said to have acted in a *quasi*-judicial capacity. But the statute was passed primarily for the benefit of the public at large and the order was for them and their protection. That fact gave an administrative quality to the hearing and to the order and was sufficient to prevent it from being subject to review by writ of certiorari. The Postmaster General could not exercise judicial functions, and in making the decision he was not an officer presiding over a tribunal where his ruling was final unless reversed. Not being a judgment, it was not subject to appeal, writ of error, or certiorari. Not being a judgment, in the sense of a final adjudication, the appellants were not concluded by his decision, for had there been an arbitrary exercise of statutory power or a ruling in excess of the jurisdiction conferred, they had the right to apply for and obtain appropriate relief in a court of equity. *School of Magnetic Healing* v. *McAnnulty*, 187 U. S. 94. *Philadelphia Co.* v. *Stimson*, 223 U. S. 605, 620.

The fact that there was this remedy is itself sufficient to take the case out of the principle on which, at common

law, right to the writ was founded. For there it issued to officers and tribunals only because there was no other method of preventing injustice. Besides, if the common law writ, with all of its incidents, could be construed to apply to administrative and *quasi*-judicial rulings it could, with a greater show of authority, issue to remove a record before decision and so prevent a ruling in any case where it was claimed there was no jurisdiction to act. This would overturn the principle that, as long as the proceedings are *in fieri* the courts will not interfere with the hearing and disposition of matters before the Departments. *Plested* v. *Abbey*, 228 U. S. 42, 51. To hold that the writ could issue either before or after an administrative ruling would make the dispatch of business in the Departments wait on the decisions of the courts and not only lead to consequences of the most manifest inconvenience, but would be an invasion of the Executive by the Judicial branch of the Government.

The writ of certiorari is one of the extraordinary remedies and being such it is impossible to anticipate what exceptional facts may arise to call for its use, but the present case is not of that character, but rather an instance of an attempt to use the writ for the purpose of reviewing an administrative order. *Public Clearing House* v. *Coyne*, 194 U. S. 497. This cannot be done.

*Affirmed.*