### INTERSTATE COMMERCE COMMISSION v. UNITED STATES ex rel. CAPITAL GRAIN & FEED CO. et al.

### SAME v. UNITED STATES ex rel. RALSTON PURINA CO. et al.

Court of Appeals of District of Columbia.
Argued October 7, 1929. Decided
November 4, 1929.

Nos. 4982, 4983.

Nelson Thomas and Daniel W. Knowlton, both of Washington, D. C., for appellant.

H. W. Van Dyke, of Washington, D. C., and Chas. E. Cotterill, of Atlanta, Ga., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. These appeals are from judgments of the Supreme Court of the District of Columbia granting writs of mandamus against the Interstate Commerce Commission. The two cases involve the same issue, were submitted together, and we will treat them as a single case. The cases relate to rates on grain and grain products in carloads from points north and west of Montgomery. Ala., and Nashville, Tenn.

The Commission, on the evidence submitted, on November 27, 1926, made reports in these cases finding that the rates complained of were, and for the future would be, unreasonable to the extent that they exceeded rates to the Mississippi and Ohio gateways plus the stated rates from said points to Montgomery and Nashville. The rates were further found to be unduly prejudicial to Montgomery and Nashville and unduly preferential to Meridian, Mobile, and Pensacola to the extent that they exceeded contemporaneous rates to the more distant points.

Reparation was prayed for in both complaints, but was denied by the Commission on the following ground: "The foregoing findings will result in a leveling of existing

rate disparities through some increases in the rates to Meridian, Mobile, and Pensacola, and reductions to Montgomery. Under such circumstances it has been our practice to deny reparation. Reparation is accordingly denied. An appropriate order will be entered."

The order required the carriers to make the new rates effective on or before March 25, 1927. This date was subsequently extended to May 25, 1927.

The prayers for writs of mandamus are to direct the Interstate Commerce Commission to determine whether or not petitioners were, as alleged in the petitions, subjected to the payment of charges on grain which were unreasonable and unjust subsequent to July 19, 1921 (two years prior to the date of filing its petition with the Commission) up to and including November 27, 1926 (the date when the order of the Commission was entered). "If so, to what extent; and, if so, the sums of money by which the petitioners were thereby damaged, including an award of damages to petitioners as required by law." It was further prayed that the court direct the Interstate Commerce Commission "to ascertain and determine the sums of money by which petitioners were damaged because of the exaction from them of unjust and unreasonable rates on grain and grain products (as found by the Commission) on and subsequent to November 27, 1926, up to and including May 25, 1927."

It will be observed that these cases involve the question of whether or not the writ of mandamus may issue to compel the Interstate Commerce Commission to make an express finding as to whether or not the rates charged the petitioners from two years prior to the date of the filing of their petitions with the Commission up to the date the findings of the Commission were made were unreasonable and unjust, and, if found to be prejudicial, to award reparation; and the further order directing the Commission to ascertain and determine the damage sustained by petitioner because of the rates exacted which were found to be unjust and unreasonable subsequent to November 27, 1926, and up to May 25, 1927, when the order of the Commission adjusting the rates went into effect. In any view it resolves itself into an attempt to invoke mandamus to compel the Commission to award reparations. This, we think, is beyond the authority of the court.

The Interstate Commerce Act, 34 Stat. 584, 589, as amended (49 USCA § 15), vests in the Interstate Commerce Commission full authority to establish and adjust railroad rates. When a petition is filed by a shipper, as in this case, setting forth that he has been charged unjust and unreasonable rates, the Commission is required by the act to make a full and complete investigation of the facts bearing upon the case, and upon completion of the investigation Section 14 of the act requires it "to make a report in writing in respect thereto which shall state the conclusions of the commission, together with its decision, order, or requirement in the premises; and in case damages are awarded such report shall include the findings of fact on which the award is made." 49 USCA § 14.

The duty of the Commission in regard to awarding reparations or damages is embraced in section 16 of the act, which provides: "That if, after hearing on a complaint made as provided in section thirteen of this Act, the Commission shall determine that any party complainant is entitled to an award of damages under the provisions of this Act for a violation thereof, the Commission shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named." 49 USCA § 16.

It will be observed that no duty is imposed upon the Commission to fix the amount of reparation, or to make any finding of fact in relation thereto, unless the Commission shall find that the complainant is entitled to an award of damages. It logically follows that upon completion of an investigation the judicial duty devolving upon the Commission is to first determine whether or not, under all the facts and circumstances of the case, reparation should be awarded. If it finds in the affirmative, it must then make a finding of fact upon which the judgment is based. If it finds in the negative, as in this case, no such statement of fact is required.

The finding of the Commission that, where its conclusions result in a leveling of existing rate disparities through some increases in rates and some reductions in others, it will deny reparation, is a finding based upon the facts adduced in the investigation by the Commission; and however erroneous such a finding may be, or inconsistent with a just and equitable administration of the Interstate Commerce Act, it is nevertheless a ruling made by the Commission in the exercise of its quasi judicial discretion which cannot be controlled by mandamus.

It will be noted that the prayer of the complainants in each case calls for a definite finding by the Commission, which amounts to an award of reparations based upon the extent of the alleged unreasonable and unjust charges which had been exacted from the pe-

titioners. The discretionary power of the Commission in determining whether or not reparation shall be made and damages awarded cannot be controlled in this proceeding, inasmuch as the Commission is not bound by any fixed rules in determining the extent of the damage. While the unreasonable and unjust charges exacted from a shipper are a proper measure of damage (So. Pac. Co. et al. v. Darnell-Taenzer Lumber Co. et. al., 245 U. S. 531, 38 S. Ct. 186, 62 L. Ed. 451), the Commission may, in assessing damages, compute interest as a proper element (Louisville & Nashville R. R. Co. v. Sloss-Sheffield Steel & Iron Co., 269 U. S. 217, 46 S. Ct. 73, 70 L. Ed. 242), or the Commission may take into consideration other elements which would furnish a different standard for an award of damages. Thus it appears that the order entered by the court below would operate to control the discretion of the Commission in a purely arbitrary manner based upon a single finding of fact, which the Commission in the free exercise of its judgment and discretion might find not to be controlling.

In Donner Steel Co. v. Interstate Commerce Commission, 52 App. D. C. 221, 285 F. 955, 958, this court refused mandamus in a case where the Commission denied reparation on the basis of alleged loss of profits. It was contended, and appeared from the record, that the loss sustained resulted from the expense unjustly imposed upon the steel company of spotting cars at its plant. It was claimed that the profits of the company were reduced to the extent of the charges imposed, and the evidence fully disclosed that, if any damage was sustained, it was upon this basis. The writ of mandamus was sought to compel the Commission to enter an order for reparation based upon the findings of fact made by the Commission. This court, in its opinion, said: "While it is difficult to understand just the theory upon which the Commission, in the light of its former decisions, reached the conclusion that appellant had not been damaged, yet the law reposes in it jurisdiction to pass upon issues of fact, and if evidence has been excluded that should have been admitted, or a wrong conclusion of fact has been reached and errors of law occur, it results from a mistaken judgment which can only be reviewed and corrected in a proceeding in error."

■■ It is settled law that the writ of mandamus cannot be converted into a writ of error, and what is here sought is merely a correction of alleged errors committed by the Commission. While it is true that mandamus will lie not only to compel the assumption of jurisdiction, but likewise the exercise of jurisdiction, we find no lack of either in this case. The Commission assumed jurisdiction of the case, conducted its investigation, and from the facts therein found adjudged that petitioners were not entitled to reparations or damages. As before stated, however erroneous this conclusion may be, it is beyond our power to correct it in this proceeding.

The judgments of the court below are accordingly reversed, with costs.